Filed 10/2/25; Certified for Publication 10/28/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re H.T., a Person Coming Under the Juvenile Court Law. | C102265 |
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>       v.<br><br>H.T.,<br><br>     Defendant and Appellant. | (Super. Ct. No. JV140490) |

The juvenile court ordered H.T. discharged from a secure youth treatment facility to a period of probation supervision in the community,

pursuant to Welfare and Institutions Code section 875.[1]  After the probation department struggled to find housing for H.T. that would comply with the terms of his probation, H.T. asked the court to order the County of Sacramento to pay for his housing at a transitional housing facility.  The court initially granted this request, but then refused to order further payments because it believed it lacked the statutory authority to do so.

On appeal, H.T. contends the juvenile court misunderstood the scope its discretion.  We agree that the court had discretion to grant H.T.'s request under section 900, subdivision (b).  Accordingly, we will vacate the court's order and remand the matter for the court to exercise that discretion.

## FACTUAL AND PROCEDURAL HISTORY

H.T. admitted committing a crime, and the juvenile court adjudged him a ward of the court pursuant to section 725, subdivision (b).  The court committed H.T. to a secure youth treatment facility pursuant to section 875.

When H.T.'s baseline term of confinement ended, he was 21 years old.  The juvenile court held a series of probation discharge hearings pursuant to section 875, subdivision (e)(3) to discuss a reentry plan prior to discharging him to a period of probation supervision in the community.  The parties struggled to find housing for H.T. because of the confluence of three unusual constraints.  First, the proposed terms of his probation prevented him from living at home with his mother.  Second, H.T. could

---

[1]  Undesignated statutory references are to the Welfare & Institutions Code.

not live at a community organization housing facility because it did not accept people required to register under Penal Code section 290. Third, the probation department could not place H.T. at its normal housing facility because it was too close to a high school, which would violate the proposed terms of his probation.

Given these constraints, H.T. requested the juvenile court order the County of Sacramento to pay for him to live at a transitional housing facility, at a cost of $500 for the security deposit and $850 for monthly rent. The probation department objected, arguing that it could not pay for transitional housing without a contract and that the property did not have sufficient insurance to meet the contracting requirements. While "exploring additional options" and "funding streams," the probation department suggested providing three days of hotel vouchers and then helping H.T. get on a waiting list for a spot at an emergency shelter. Counsel for the County of Sacramento objected that the juvenile court was not authorized to make an order requiring the County to pay to house H.T. Over these objections, the court ordered H.T. placed at the transitional housing facility for 30 days and ordered the probation department to ensure the security deposit and monthly rent were paid.

At the next hearing 30 days later, the probation department proposed providing two weeks' worth of hotel vouchers to H.T. plus gift cards for food purchases and paying for a ride share service for transportation instead of continuing to pay H.T.'s rent at the transitional housing facility. The probation department also asserted that H.T. did not need housing because

the emergency shelter program "is the County's plan for dealing with homelessness." The counsel for the County of Sacramento reiterated and expanded upon its prior objection that no statute explicitly authorized the juvenile court to require the County to pay for H.T.'s housing. County counsel also objected that the court could not order the County to pay for something that violated its contracting regulations. H.T. continued to request that the court order the County to pay his rent at the transitional housing facility.

The juvenile court explained that it did not feel that it had "a clear basis to grant the request." Accordingly, the court ordered the probation department to provide two weeks of hotel vouchers to H.T. plus transportation and food support; the court scheduled another hearing in two weeks.

At the next hearing, the parties agreed to continue the hearing for a week with the probation department providing additional hotel vouchers for the interim. At the continued hearing, held on September 11, 2024, H.T.'s counsel informed the court that H.T. had secured employment and would receive his first paycheck in approximately 24 days. H.T. again asked the court to order the County to pay for his housing in the transitional housing facility for that time period, at which point he would be able to pay for his own housing. County counsel again objected and asserted that the court lacked authority to make such an order. The court agreed and denied H.T.'s request, explaining: "[T]he Court finds it doesn't have any further

4

authority to direct the county or the probation department to use -- to direct them to use resources to address the housing needs of [H.T.]"

After the juvenile court denied H.T.'s request, the owner of the transitional housing facility informed the court that H.T. was planning to move back to her facility in seven days in order to avoid the unsafe conditions around the hotel where he had been living and that they had a "financial arrangement." The court noted that H.T.'s mother had offered to cover six days in a hotel for him and that the probation department had offered to provide vouchers to cover a small number of additional days if necessary. The owner of the transitional housing facility also offered to provide an extra night or two for free if necessary.

H.T. filed a timely notice of appeal from the court's two orders denying his requests to have the County pay for his housing at the transitional housing facility.

## DISCUSSION

H.T. contends the juvenile court abused its discretion when it incorrectly determined that it lacked discretion to order the County to pay for his rent at the transitional housing facility for the period of approximately 24 days between the final hearing and his receipt of his first paycheck. The People respond that the issue is moot and, in any event, the court correctly determined that it lacked discretion to issue such an order. We agree with H.T.

I

*Mootness*

As an initial matter, the People contend H.T.'s claim is moot because he "secured housing at [the transitional housing facility] without additional assistance from [the] probation [department]," which means "any ruling from this [c]ourt would have no practical effect on [H.T.]'s claim." The People miss the point, which centers on payment as opposed to merely housing.

" 'A case becomes moot when a court ruling can have no practical impact or cannot provide the parties with effective relief.' " (*In re Stephon L.* (2010) 181 Cal.App.4th 1227, 1231.) In this case, our review can have a practical impact if we decide in H.T.'s favor and the juvenile court exercises its discretion to require the County to pay for H.T.'s housing as he requested. Because H.T. made a "financial arrangement" to pay for at least some portion of his housing himself, a ruling in his favor on this appeal can provide him with effective relief. (Cf. *In re M.W.* (2021) 67 Cal.App.5th 586, 590 [holding minor and his family not liable for costs of probation treatment program and ordering appropriate agency to reimburse them for amounts they had paid].) We therefore consider the merits of the appeal.

II

*Discretion to Order a County to Pay for a Ward's Housing*

The parties disagree about the scope of the juvenile court's discretion to order the County to pay for housing for a ward of the court who is being discharged to a period of probation supervision in the community, pursuant to section 875, subdivision (e)(3). H.T. contends that

6

section 900, subdivision (b) and section 727 authorize the court to order such payments, in accordance with the aims of juvenile court law, as outlined in section 202, subdivision (d).  The People argue that these sections are not specific enough to authorize the court to order payments for housing and that section 900 does not apply to H.T.  H.T. has the better argument.

Section 900, subdivision (b) provides:  "If it is necessary that provision be made for the expense of support and maintenance of a ward of the juvenile court or of a minor person concerning whom a petition has been filed to declare the person a ward of the juvenile court in accordance with this chapter, the order providing for the care and custody of the ward or other minor person shall direct that the whole expense of support and maintenance of the ward or other minor person be paid from the county treasury. All orders made pursuant to this subdivision shall state the amounts to be paid from the county treasury, and those amounts shall constitute legal charges against the county."

We review a juvenile court's interpretation of a statute de novo.  (*In re D.H.* (2020) 58 Cal.App.5th 44, 51; accord *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712 [trial court's conclusions of law in exercising its discretion are reviewed de novo].)  "We start with the statute's words, which are the most reliable indicator of legislative intent." (*In re R.T.* (2017) 3 Cal.5th 622, 627.)  " 'We interpret relevant terms in light of their ordinary meaning, while also taking account of any related provisions and the overall structure of the statutory scheme to determine

what interpretation best advances the Legislature's underlying purpose.' " (*Ibid.*) "When, however, a term has developed a particular meaning in the law, we generally presume the legislative body used the term in that sense rather than relying on ordinary usage." (*In re Friend* (2021) 11 Cal.5th 720, 730.) "[C]ourts do not construe statutory provisions 'so as to render them superfluous.' " (*In re J. W.* (2002) 29 Cal.4th 200, 210.) Rather, we give statutes " 'a reasonable and common sense construction which will render them valid and operative rather than defeat them' " (*ibid.*), and "harmonize statutory provisions to avoid absurd results" (*John v. Superior Court* (2016) 63 Cal.4th 91, 96).

The plain language of section 900, subdivision (b) authorizes the juvenile court to order a county to pay "for the expense of support and maintenance of a ward of the juvenile court" when "necessary." The People's objections fail to create any ambiguity.

First, the objection that the statute is not specific enough to authorize expenditures for housing ignores the meaning of the term "maintenance" in this context, which has always included the cost of lodging, among other necessities. (Black's Law Dict. (12th ed. 2024) p. 1139, col. 2 [defining "child maintenance" as "furnishing of necessaries . . . including food, clothes, lodging, and school supplies" or as a "regular monetary contribution sufficient to furnish such necessaries, esp. when made in accordance with a court order"]; accord Black's Law Dict. (4th ed. 1957) p. 1106, col. 1 [defining "maintenance" as "[t]he furnishing by one person to another, for his support, of the means of living, or food, clothing, shelter,

8

etc., particularly where the legal relation of the parties is such that one is bound to support the other, as between father and child"]; *County of San Mateo v. Dell J.* (1988) 46 Cal.3d 1236, 1249 [discussing " 'costs incurred in supporting and maintaining the juvenile' " as including " 'the necessaries of life—food, clothing, shelter' "].)  In other words, section 900 does specifically authorize the court to order the County to pay for a ward's housing.[2]

Second, section 900 has long been considered legislative authorization for courts to mandate payments from public funds.  (*In re Roger S.* (1977) 19 Cal.3d 921, 935 [citing § 900, among other authorities, for the proposition that juvenile courts may order wards placed in private or public facilities and given psychiatric treatment at public expense]; 64 Ops.Cal.Atty.Gen. 567 (1981) [determining that "[§] 900 gives the juvenile court the authority to order the county in which a juvenile proceeding takes place [(as opposed to the county where the juvenile resides)] to pay for the support and maintenance of a minor in a court-ordered placement"].)  This means such an order does not violate the separation of powers doctrine or make an improper gift of public funds.  (See *Payne v. Superior*

---

[2]  Because section 900 authorizes such payments, we decline to reach H.T.'s contention that section 727 also authorizes the juvenile court to order the County to pay his rent at the transitional housing facility.  Section 727 also authorizes orders for the maintenance and support of a ward of the court but is not as specific as section 900 regarding whom the court can order to make such payments.

9

*Court* (1976) 17 Cal.3d 908, 919-920, 924 & fn. 6 [Legislature must authorize expenditure of public funds before court can order such payments]; *In re William M.W.* (2019) 43 Cal.App.5th 573, 580, 592-595 [no separation of powers violation or improper gift of public funds when juvenile court ordered social services agency to expend funds to provide discovery free of charge].)

Finally, the People's apparent argument that subdivision (c) of section 900 makes subdivision (b) inapplicable to H.T. evidences a lack of understanding of the statutory scheme. Each subdivision of section 900 governs distinct categories under the juvenile law. Subdivision (a) governs payments for "support and maintenance of a dependent child of the juvenile court or of a minor person concerning whom a petition has been filed to declare the person a dependent child of the juvenile court." Subdivision (b) governs payments for "support and maintenance of a ward of the juvenile court or of a minor person concerning whom a petition has been filed to declare the person a ward of the juvenile court." And subdivision (c) of section 900 governs children who are placed under supervision pursuant to section 301 "in lieu of filing a petition or subsequent to dismissal of a petition already filed," as well as children who are under supervision under section 654, subdivision (a) "in lieu of filing a petition to declare a minor a ward of the court under Section 601 or requesting that a petition be filed by the prosecuting attorney to declare a minor a ward of the court under subdivision (e) of Section 601.3 or Section 602." Thus, as the juvenile court recognized when the People made this argument below, subdivision

(c) *expands* the application of section 900 to additional categories under the juvenile law rather than restricts its application. The People's position--that a ward must fit in one of the categories in subdivision (c) to be eligible for maintenance--would render subdivision (b) mere surplusage because the category is mutually exclusive with the categories covered by subdivision (c). Our construction harmonizes the subdivisions instead.

The amendment history of section 900 further corroborates the conjunctive purpose of subdivision (c). When the Legislature first moved provisions relating to expenditures by counties for the support of wards to section 900 in 1961, the section lacked subdivisions and governed only wards and dependents. (Stats. 1961, ch. 1616, § 2, p. 3499; cf. Stats. 1943, ch. 676, § 1, p. 2431.) In 1972, the Legislature added former subdivision (b), which expanded the section to cover minors under supervision pursuant to section 654. (Stats. 1972, ch. 924, § 1, p. 1651.) In 1976, the Legislature expanded former subdivision (b) to cover minors under supervision pursuant to former section 330. (Stats. 1976, ch. 1068, § 77, p. 4798.) Finally, in 2017, the Legislature split former subdivision (a) into subdivision (a), governing dependents, and subdivision (b), governing wards, moving former subdivision (b) to subdivision (c). (Stats. 2017, ch. 678, § 17.) This expanded the juvenile court's discretion to order payments for the support and maintenance of wards of the court because the Legislature did not include the statutory cap on the amount of monthly payments in subdivision (a) in the new subdivision (b). The amendment also removed the ability of the county boards of supervisors to control the

11

amount of the cap for wards, instead entrusting the determination of the amount necessary to the discretion of the juvenile court. This history demonstrates that the Legislature intended to expand, not limit, the juvenile court's power to order payments for the support and maintenance of wards when it added subdivision (b) to the statute.

As evidenced by both the plain language and the history of section 900, subdivision (b), the Legislature has authorized juvenile courts to order counties to pay for housing for wards of the court when necessary. Thus, the juvenile court erred when it concluded it had no "further authority to direct the county or the probation department to use . . . resources to address the housing needs of [H.T.]" A "court abuses its discretion when it misinterprets or misapplies the law." (*In re M.W.* (2018) 26 Cal.App.5th 921, 931.) "Alternatively stated, if a trial court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, it cannot be said the court has properly exercised its discretion under the law." (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 15.) In such a situation, "remand to the trial court is required to permit that court to exercise *informed* discretion with awareness of the full scope of its discretion and applicable law." (*Id.* at p. 16.)

Accordingly, we will vacate the juvenile court's order denying H.T.'s request to direct the County to pay for his rent at the transitional housing facility for the period of approximately 24 days between the final hearing and his receipt of his first paycheck. On remand, the juvenile court must consider, under section 900, whether it was "necessary that provision

12

be made for the expense of support and maintenance of" H.T., in the form of rent, at the time of the September 11, 2024, hearing. If so, the court shall direct the County to pay the necessary expense or reimburse whoever already paid the expense. If not, the court may again deny the request for rent.

## DISPOSITION

The juvenile court's September 11, 2024, order denying H.T.'s request to have the County pay his rent at the transitional housing facility is vacated. The matter is remanded for further consideration consistent with this opinion.

_____/s/_____
Duarte, J.

We concur:

_____/s/_____
Robie, Acting P. J.

_____/s/_____
Renner, J.

13

Filed 10/28/25

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| In re H.T., a Person Coming Under the Juvenile Court Law. | C102265 |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>H.T.,<br><br>    Defendant and Appellant. | (Super. Ct. No. JV140490)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

APPEAL from a judgment of the Superior Court of Sacramento County, Joginder S. Dhillon, Judge. Order vacated and remanded.

Courtney M. Selan, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donahue, Senior Assistant Attorney General, Eric L. Christoffersen, Supervising Deputy Attorney General, and Caitlin Franzen, Deputy Attorney General for Plaintiff and Respondent.

THE COURT:

The opinion in the above-entitled matter filed on October 2, 2025, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.


BY THE COURT:


_____/s/_____
Robie, Acting P. J.



_____/s/_____
Duarte, J.



_____/s/_____
Renner, J.

2